Next case is Aristocrat Technologies v. Multimedia Games, 2007-1375. Mr. Beaton, when you are ready. Thank you Judge Lurie. May it please the Court. I'd like to reserve five minutes for rebuttal. You are entitled to reserve whatever you would like. On the original sheet that we were given, maybe you changed your mind, you wanted to reserve ten. Is that a mistake? I thought that I told her I would take ten and reserve five. That's what I would do. That will be it. I believe the fundamental mistake made by the District Court in this case was a failure to view the specification through the eyes of a person skilled in the art. Indeed, the District Court failed to make any finding as to what was the level of skill of a person of ordinary skill in the art. As this Court noted just a couple of months ago in the Allboys case, that logically is an essential step to the next step of construing that specification. So you're asking not for reversal but for vacation and remand? That's correct. And we'd like the case to proceed from there. The District Court did acknowledge in its order that under the law the specification was supposed to be viewed through the eyes of a person skilled in the art. The specification is the starting point. In other words, correct me if I'm wrong, but under the cases, you look at the specification and say, all right, what is there in terms of disclosure? And then the question is, what would one skilled in the art understand that disclosure to convey? Is that correct? Yes, I would agree with that, Judge Shaw. Here the District Court did acknowledge that the law is that you're supposed to view the specification through those eyes of the person skilled in the art, but then simply failed to make a finding as to what that level of skill was and didn't apply it to these cases or to these facts. The District Court instead concluded that the specification is lacking through its own eyes, its own untrained eyes. It's lacking, said the District Court, because it fails to rule out all hypothetical conceivable alternative corresponding structures. For example, in the case of the controller, our position is that the control means is not means plus function language to begin with. But assuming for a moment, for the sake of argument, that it is. Well, certainly presumptively, isn't it? You used the word means. That's true. Presumptively, it is. But under the Rodine case, it's not means plus function language if there is corresponding structure to perform that function in the claim itself. In the claim itself. Right. And we believe that there is for the reasons said. You're saying all the subsidiary means are the structure of the control means. That's right. Under control means, five sub-elements are cited. We would acknowledge that those five sub-elements are means plus function language. No dispute there. But the control means itself. For which there is adequate structure in the specification. For which there is adequate corresponding structure in the specification. But assuming for a moment that the control means is means plus function language, just for the sake of argument. The District Court here concluded that there was insufficient corresponding structure. Now, our expert testified that to a person skilled in the art, the controller was simply a microprocessor. To a person skilled in the art, reading this specification, controller and microprocessor were essentially synonymous. Now, the other side's expert acknowledged that indeed a microprocessor would perform the controller functions. Now, just to make sure we have the right references here. You're relying for that, I take it, on paragraph 14 of the Jones declaration? Yes. Where Jones says, in reference to all of the components of the controller box in figure 3. That all of which would have indicated a digital electronic device with general computing or microprocessor functionality. That's correct. And that's pretty much it, isn't it? Well, the other side acknowledged that a microprocessor would indeed perform these functions. Sure, but that's not enough, just to say that there is something that would perform it. You have to actually call it out. I would agree with that. But the other side did not dispute our expert's construction that a microprocessor would perform these functions. No, no, I understand that. Again, that doesn't get you even to first base. Well, that doesn't get us all the way home, for sure. The other side, I should point out, too, acknowledged in its Markman briefing that the controller was the corresponding structure to control means. And the examiner, who was not oblivious to section 112 issues in the course of prosecution, had no problem with the controller. Now, the only thing that the other side points to as some sort of alternative structure for the controller is this so-called state machine. Now, the state machine, according to the other side's own expert, is something that would be, and I quote the other side's own expert, very bulky, cumbersome, not cost effective, but not impossible. And it would be, and I quote again the other side's expert, this is his state machine, the only alternative structure offered to the microprocessor by a person skilled in the art. He said it would be, I quote, the most ludicrous thing you've ever seen in your life. And it might be bigger than the room, they were in a conference room for the deposition, so it might be bigger than a conference room. And, finally, he said he was not aware of this state machine contraption ever having been used for this function in a gaming machine prior to the time the application was filed, or, for that matter, any time since then, to the present day. The problem with this analysis by the other side's expert, which ultimately was adopted by the district court, is it simply ignores the person of ordinary skill in the art standard. It says that if something alternative could be conceived of, then the corresponding structure is too vague. I think that that's simply not the law. This would be a different case if controller meant to a person skilled in the art one of several things, plausibly. If to a person skilled in the art, controller meant a microprocessor, or a widget, or a gadget, or you fill in the blank. Well, you say microprocessor. One possible, seems to me not preposterous, example of something that isn't a microprocessor but nonetheless could serve the control function would be a mainframe, which is attached to a bunch of these machines. Would that infringe, in your view, this patent? Would that infringe this patent? Well, let's start with that. Which is eskimo. Go ahead. Well, I think not. To a person skilled in the art, it corresponds... So you think that, you're saying then that the mainframe is not called out by the word controller? The mainframe is not literally a controller, according to a person skilled in the art. Now, it may be equivalent to a microprocessor, so I don't want to give up an infringement argument down the road. But it is not literally a controller. To a person skilled in the art... How do I know that? We have the testimony of a person skilled in the art. But the person skilled in the arts has a digital electronic device with general computing or microprocessor functionality. That would seem to include not only a microprocessor, but also a mainframe. Well, I think that that is what you're saying, perhaps out of an abundance of caution. But our position is that it's a microprocessor. You're not going to fit a mainframe computer... But isn't that the problem? Well, I understand, but isn't that the problem that it's hard to know whether the district court or us are a potential infringer, whether the scope of the structure includes something other than a microprocessor just by reading the patent. And that is what 112.6 wants people to do, to call out the structure. Well, I don't think that that's the position of the other side. The only alternative structure offered by the other side to a microprocessor has been the state machine, which is ludicrous, bigger than a room, and has never been used before or after the application was filed for this purpose. So I think the mainframe inquiry is a hypothetical one on the record that we have right now. On the record that we have right now, microprocessor, or strike that, controller means one of two things. It means either microprocessor or it means something ludicrous that's bigger than a room. I don't think section 112, paragraph 6 requires us to rule out that which is ludicrous. Now, this person of ordinary skill in the art standard is, of course, incorporated specifically into the MPEP, which I realize is not law and is not binding on this court. But in the Atmel case eight years ago, this court cited that language with approval. There have been a lot of patent applications and a lot of patent applicants who relied upon that citation with approval. In the eight years since. Do you think that random number selection means, let's assume that's means plus function, is limited to a computer generated random number system? Yes, I do. And if I had a system that relied, say, on simply running down the trillion or so calculated decimals of pi, which is about as close to a random number generating system as you can come, I guess, that would not be, you think, would that be a random number sequencer? Not one within the scope of this patent? If the mechanism for tracking down the first trillion digits of pi... We have them in a library, let's say, we just are not using a computer to extract them from the library. Then I don't think that that would be covered. It would be, in the broad sense of the word, a random number sequence means, right? It would not be embraced within the corresponding structure taught by this specification. Okay, now why not? The claim first says that the random number generator is part of the controller. The specification also says that the random number generator is part of the controller. Now, to a person skilled in the art, the controller is a microprocessor. So I think the random number generator has to be part of the microprocessor. The testimony by both sides' experts on this point was that an RNG was something that was common. It was off-the-shelf available. A person skilled in the art readily knew what was meant by a random number generator. Now, an alternative was offered by the other side's experts. Two alternatives, to be exact. One was the state machine. The other side's experts said, well, but you could have this RNG program as part of the state machine, as opposed to part of a microprocessor. Now, I suppose if you buy the argument that controller could mean a state machine, you'll buy the argument that the random number generator within the controller could be a random number generator within the state machine. But I don't think that's the point for the reasons we discussed. The other alternative offered by the other side for a random number generator is a ball blower. These were the only two alternatives offered, the Ludicrous state machine and a ball blower. You may recall that a ball blower is one of these gizmos where ping pong balls or some sort of numbered balls blow around inside a container. One pops out, or it lands in another container, and that's the number that you choose in the sequence of random number generators. There's no evidence that a person skilled in the art would have interpreted a random number generator in the context of this specification and this art. You have to remember we're talking about a slot machine type of thing, to be a ball blower. A ball blower has never been used for that purpose before or after the application was filed. Mr. Beekner, we're well into your rebuttal time. Do you want to use it or save it? I will save it. Thank you. Mr. Byrd. Thank you, Judge Lurie. The theme of the reply brief and of the argument Your Honor has just heard is that we should rule out the microprocessor as a way to implement this patent. And that is wrong. The patent must disclose the structure. And I'll say as a little bit of an aside, there was no issue in the district court as to whether either Mr. Ladner or Mr. Jones was a person sufficiently skilled in the art to tell the district court what the technology was underlying this patent. And the argument that the district court missed something on that point is an invention that simply comes out of a recently decided case on a point that was not an issue in the district court. On its face, this patent discloses no structure whatsoever. And Mr. Jones, aristocrat's 30B6 expert who actually worked, 30B6 witness and expert who actually worked on this patent, repeatedly testified that as he reads it, it discloses no structure. And although aristocrat built a model with a microprocessor, there are other ways to implement the means plus function. Mr. Burns, when you refer to Mr. Jones' testimony, are you referring to his deposition testimony? We have two pieces of Jones' testimony. I guess there's the declaration, I think to which Judge Bryson referred when in his discussion with Mr. Bede. And then there's also the deposition testimony. In that latter statement, were you referring to the deposition testimony? I was, Your Honor. In his deposition, he repeatedly said with respect to the controller itself and with respect to each of the elements of the controller that the patent does not disclose. He also said that although aristocrat built a model with a microprocessor in it, there are other ways to implement this patent. Mr. Burns, let me ask you one question. This doesn't relate. Well, it does relate to this case, but it's not one of the technical questions. Our cases seem to teach us that the inquiry in this kind of a situation is two-pronged. One, a claim construction inquiry, and then sort of a fact-based inquiry based upon what one's skill in the art would discern from what's disclosed in the specification. That seems to be the law. So do we have here a question, a situation where the experts are balanced or in equipoise on what they say? I mean, taking Mr. Jones on the one hand and Mr.—who's your expert?  Mr. Ladman, I'm sorry. Taking what we have in the record from them, is this a situation where we ought to have a hearing as to what they said? No, this is not a case where there's a triable issue of fact. And I will go back to Mr. Jones's—an admission that should end the case. And remember, when we speak of him as an expert, he was also designated as a person most knowledgeable under FRCP 30b-6. So he is speaking for the company. And this goes directly to the notion that the controller could not be implemented by a state machine, as was argued in the reply brief and here at the podium. At page 278 of the record, in part of a relatively long answer to the question, do you think a state machine could operate as a controller? He first says yes. And then he has an explanation of a state machine that might be part of a microprocessor, a state machine comprised within one. And then at page 23 of his deposition, in the appendix at 278, he says, equally, I suppose, if you were of the mind, you could create something totally electronic without a processor, and you could implement some form of a state machine with that. Mr. Britt, why isn't control means represented by the structure of the underlying sub-needs, each of which has structure? A memory, a random sequencer, etc. In the first place, control means by itself is a means plus function word. Biomedino said a phrase. Biomedino settled that. A matter on which you disagree with the appellant. I think we don't disagree about the law. He said it's not a means clause. But he says it's not a means clause because of the five functions. He conceded at this podium that each one of those is a means plus function element by itself. But aren't they represented by structure? His point, therefore, is that the super means clause, or control means, is represented by subordinate structure, which constitutes the structure of the control means. I don't want to try to get into his head, but it seems to me that when a means plus function element, when the claim description of a means plus function element is nothing but means plus function elements, there must be structure for each and every one of those elements. And isn't there here? There is not. What's wrong with memory and random sequencer and several others? In fact, we can go through each one, but in fact those are each words that when you actually ask Mr. Jones on behalf of the company or when you look at the real world, could be implemented by any one of a number of different structures. What about memory? That's the one, at least in modern times, which we're looking back through a prism of 20 years. In modern times, memory certainly is strongly associated with computing devices. Why is that not at least evocative of computer? I would agree, Your Honor, that today that's true. If Your Honor ran your chambers at the time of this patent by having a word processor in your chambers and word processors with your law clerks, you would have carried memory back and forth between you on floppy disks. We're way behind the technological revolution. Right. You wouldn't have allowed that in your chambers. That's one reason that courts didn't do that, because those of us who were carrying it back and forth with our secretaries suffered too many viruses and other problems on floppy disks. So yes, I would agree, Your Honor, that is the word most evocative of a computer. But if one puts oneself in the early 70s, when the technology behind this patent was developed and written into this patent... Well, we have to put ourselves in 86, is the key date, right? That's when the patent was written, yes. Right. So that's the date that we look to for determining the context within which to view the words, right? That's correct. So the 70s, never mind the 70s. A lot happened between the late 70s and the mid-80s. Right, but I can assure you that the illustration I gave you of carrying a floppy disk around the corridors of this courtroom was exactly accurate for what people were doing with memory at that time. But I'm not sure that example really helps you much, because it seems to me what you've illustrated is that memory was even in that example something that was used in connection with computing. And that is to say it was a structural element that was part of a computing operation. You're right. I haven't gone far enough. What I have illustrated in that is that although memory was evocative of computer at the time to some degree, it was also evocative of everything else that had ever been used for memory up to that time, including state machines, including ladder logics, including anything that would store a way that things were done mechanically, electromechanically, or electronically. And that's why this patent is indefinite. If this patent were... Well, let's take an example. Take a very simple calculator, non-computer, purely mechanical calculator, and I type in 175, and I want to add 25 to that to get 200. I put in 175. One could say that now has a memory which is mechanically showing 175 until I hit clear. Exactly. But the question is not whether you could conceive of that as being a form of memory, but whether the word memory, when used in a patent in this context, would likely be used to refer to that kind of machine. And that seems to me a much more questionable proposition. I beg to disagree, Your Honor, with the word likely. Because if we were talking about enablement, and we were asking whether when somebody had built this, is this the machine of the patent, does the patent enable you to make it, then likely would be a great word. But the problem here with means plus function is that the patentee has to call out some structure. Well, not quite, though, right? I mean, our cases seem to suggest that there has to be something called out, but it doesn't have to be done in hype verbo, because all that you have to do is to call out something that a person of skill in the art would identify as in effect calling out, i.e., docile, and I guess S3 are good examples of cases in which there was a general word, but the conclusion reached by the court was that that word to a person of skill in the art would denote something structural, which wasn't expressly denominated in the patent. My question is, why isn't memory just such a case? Because the two witnesses here did not say, the two witnesses here who are skilled in the art, did not say the magic words that connotes only memory. Only computer. Right, only computer. They have to say only computer. Then you have structure for a means plus function patent. If they don't say only computer, then what you have is a patent that was written in an attempt over broadly to cover the entire field of all kinds of memory without specifying any. The policy point here is patents need to be specific, results need to be predictable, or else patents like this suppress the art, suppress legitimate competition, and produce unproductive lawsuits. In the brief time I have, I would like to focus, I would like to just mention a couple of other elements in this patent, particularly since it's now conceded that everything, that each of the five elements are in fact, and it may be four elements since they used means for storing twice. Since each of those are means plus function. I'll start at the very last one. There is a means for displaying within the control means. There is also a display means. The means for displaying. We have testimony in the record that well, what was really intended was probably something along the lines of an electronic input to the wheels. Sorry, the means for displaying as written is a visual means, and nobody can come up with any part of a visual display that can be part of a microprocessor or a program or anything else. The means for sequentially selecting. Even in his declaration, Mr. Jones says this is a program or a device. That is fatal. If he said it's a microprocessor with a program, he's got a microprocessor. But when he says a program or a device, it could be a device. It could be any device. A cycle register? A cycle register in this patent is nothing other than a counter. It's like the mechanical calculator that Judge Bryson was speaking of. It simply tells you where you are in the 300 place. It is not at no place in this record did anybody say there is any such known item as a cycle register. I'd like to comment briefly about, and there are at least two, by the way, that are program or device and fatal for that reason. I'd like to comment very briefly on the suggestion that our expert witness' testimony was not credible in saying that a state machine could do this. I have read Mr. Jones speaking for the company, saying that it could perform this patent. Everything about state machine in the cross-examination of Mr. Ladner and his deposition is focused on his 2000 patent, which is a patent that inherently uses video to throw five poker hands in front of somebody. And all of the commentary about it might fill a room, which appeared to be a joke at the time. All of this commentary is about a hypothetical patent. It says nothing about the size of a state machine that would need to be used to implement this patent. In fact, Mr. Ladner in his declaration points out that IGT, the leader in the industry, in a patent in the year 2000, exhibit D to his declaration, used a state machine, called out a state machine, as one of the ways to implement a gaming device just like this. If there are no further questions, I'm pleased to submit. Well, I do have one question. It was alluded to earlier, that because our inquiry is as to whether a person of skill in the art in 1986 would understand particular words to denote particular structure, I think everybody agrees that we at least have to face that question in this case, the kind of docile question, whichever way would come out. Why isn't that, in light of at least the declaration of Mr. Jones, who says that the language in the patent would call out a computer microprocessor-like device, why isn't that at least a question of disputed question of material fact? After paragraph 14, there are several paragraphs I've alluded to here, where he uses the fatal or device language. But even within paragraph 14, I urge you must read that with his deposition, in which it is quite clear that he is speaking in both places about how he implemented that pattern, how Aristocrat implemented that patent with a model. And his deposition tells you that other devices would serve. So what you're saying is what he's really doing is telling us about enablement, not about written description for purposes of 1126. That is exactly correct, Your Honor. Thank you for your patience. Thank you, Mr. Bird. Mr. Beaton, we'll give you your full five minutes, since we gave Mr. Bird some extra time. Thank you. First, I want to correct one thing. Mr. Bird asserted that our position is that the controller could not be implemented with a state machine. That is not our position. The controller most clearly could be implemented with a state machine, but it couldn't plausibly be implemented with a state machine. The question isn't what's conceivable, what's possible, and what's not impossible. It's what does the language mean to a person skilled in the art? A person skilled in the art, the evidence is, to a person skilled in the art, the controller would be a microprocessor. Now, as the panel indicated a moment ago in an exchange with Mr. Bird, or alluded to, there is a factual dispute here, I think, between the two experts. This is a summary judgment proceeding that brings us up here. Those factual disputes, obviously, are to be resolved in our favor, not to be weighed, and they're certainly not to be resolved in the other side's favor. Now, with respect to the deposition testimony that Mr. Bird points to, the deposition testimony, I think, is a bit confusing, as deposition testimony often is, in that the other side has taken those snippets, I think, somewhat out of context, and we've tried to correct that out-of-context snippet work in our reply brief. But the bottom line is that, at best, I think, the other side can say that there's some sort of ambiguity, and perhaps they question the credibility or consistency of Mr. Jones' testimony, but that's not summary judgment material, and that shouldn't bring us up to this court today. Finally, there was mention of magic words, and if only we had used magic words, then we wouldn't be here today, and the magic words would be computer, apparently. Well, I would submit that the other side would find those magic words not to be sufficient either. They would say a computer is simply that which computes, and not so things to computations. To a person skilled in the art, the controller is a microprocessor. Language is not capable of mathematical precision, I would submit. A mathematical formula is capable of only one correct answer in general, if I remember my mathematics right, but a language description of something is different. A language description of something ordinarily admits of more than one embodiment. You can refer to a chair, using the Intel example now, but that leaves open the question of whether the chair is red or blue. You can refer to a red chair, but that leaves open the question of whether the red chair is three legs or four. You can refer to a red three-legged chair, but that leaves open the question of whether the chair is made of metal or wood. And ad infinitum, the specification as a logical matter can never rule out all but one of the infinite number of embodiments. So that's not the standard. That can't be the standard, because then section 112 paragraph 6 simply doesn't work. What's your response, just before you sat down Mr. Bird, advance the view that paragraph 14 on page 711, A711, which is the Jones Declaration, is speaking not, it is speaking about implementation of some particular device as opposed to being a reference to what's in the patent. That's the first I've heard of that argument. That certainly didn't appear in their brief, and I would have to go back and look at it myself to give you a certain answer. But I think in context, that's not what's said. I think that he's referring to state machines in general. Can I take any more questions, your honors? Apparently not. Mr. Beaton, thank you. The case will be taken under advisement. Thank you very much.